IN RE APPLICATION OF WAGNER.

[Cite as *In re Application of Wagner,* 119 Ohio St.3d 280, 2008-Ohio-3916.]

(No. 2008-0728—Submitted June 24, 2008—Decided August 12, 2008.)

**Per Curiam.**

{¶ 1} The applicant, Margaret Janet Wagner of Fort Thomas, Kentucky, is a candidate for admission to the Ohio bar and initially applied to take the Ohio bar examination that was administered in July 2007. The Board of Commissioners on Character and Fitness has recommended that we disapprove the 2007 application but permit the applicant to reapply for the July 2008 exam, based on findings that she failed (1) to readily disclose a charge of driving under the influence, (2) to pay fines assessed upon her conviction of that offense, and (3) to accept responsibility for her wrongdoing. These failings warrant disapproval; however, if the applicant reapplies and is able to establish her character, fitness, and other qualifications for bar admission, she may take the February 2009 bar exam.

### Events Leading to the Board's Recommendation

{¶ 2} The applicant, a May 2007 graduate of the University of Cincinnati Law School, had registered as a candidate for admission to the Ohio bar in November 2005. She was stopped for driving erratically at 4:00 a.m. on April 30, 2006, in Newport, Kentucky. She had been drinking and, after registering .17 grams of

alcohol per 210 liters of breath, was arrested and charged with driving under the influence of alcohol ("DUI").

{¶ 3} Pursuant to Gov.Bar R. I(11)(C)(3) and (D)(1), two members of the Cincinnati Bar Association's admissions committee interviewed the applicant on June 13, 2006, to ascertain whether she possessed the requisite character, fitness, and moral qualifications for admission to the practice of law. The interviewers asked the applicant, "Is there anything in your application that needs to be changed, updated, that would make it no longer correct? Things like changes of address, recent convictions, problems with alcohol, problems with credit and other such things?" The applicant denied any such problems.

{¶ 4} The applicant, who eventually pleaded guilty to the DUI charge in August 2006, did not disclose the charge, then pending, during her interview. She has since explained that she did not think that she had problems with alcohol and that at the time of the interview, she had not been convicted of any offense. Within a day after her interview, however, a friend advised her that she should have disclosed the DUI charge even if she intended to contest it. As a result, the applicant quickly called one of her interviewers, and they arranged for a second interview.

{¶ 5} Due to scheduling and other procedural complications, however, the applicant's second interview did not take place until June 21, 2007, nearly one year after she was convicted of DUI and ordered to pay attendant fines and costs. By the time of her second interview, the applicant had also applied to take the July 2007 bar exam, properly updating her application with notice of her DUI conviction. The interviewers recommended the applicant's approval after the second interview, although they expressed some reservations about her willingness to accept responsibility for her conviction and initial nondisclosure. Their concerns stemmed in large part from an undated written statement that the applicant provided to her law school after her conviction and then supplied along with her supplemental character questionnaire. The statement, which the applicant did not recant at the panel hearing, reads:

{¶ 6} "In August or September I plead guilty to DUI charges. As I was driving my intoxicated friends home at four am on a Saturday night, I was pulled over by a bored Newport police officer, whose girlfriend was riding along, for swerving within my lane and making a wide turn. I passed the field sobriety tests, although the tape mysteriously disapeered [sic], but failed the breathalyzer due to a medical condition (IBS [irritable bowel syndrome]). Being unable to afford a decent lawyer, much less an expert on erudication [sic] and breathalyzers, I decided to plead guilty.

{¶ 7} "After conducting some research, I was amazed at the unreliability of breathalyzers, and will never blow in one again, even if I have not had a sip of

alcohol. Every time I get the chance I pass the knowledge I have gained from this experience to others.

{¶ 8} "Moral of this story, if the system wants you, and you have little money, it will get you."

{¶ 9} The bar association's admissions committee then recommended final approval of the applicant's character and fitness. In July 2007, however, the board invoked its sua sponte authority under Gov.Bar R. I(10)(B)(2)(e) to further investigate the applicant's character, fitness, and moral qualifications.

{¶ 10} Before and during the ensuing board investigation, the applicant defaulted on an agreement to apply $50 per month toward the fines and court costs assessed against her for the August 2006 DUI conviction. She finally satisfied this obligation in December 2007, shortly after she applied to take the February 2008 bar examination. The applicant reported her delay in a December 20, 2007 facsimile letter to Office of Bar Admissions, explaining that she had not realized her duty to report this arrearage in response to inquiries about newly incurred fines and debt in the supplemental character questionnaire.

{¶ 11} A panel appointed by the board heard the case on January 4, 2008. The majority of the panel members recommended that the applicant be permitted to apply for the bar exam to be administered in February 2008. In recommending the applicant's disapproval, however, the board adopted the dissenting panel member's view and recommended that the applicant be permitted to apply for the July 2008 bar exam.

## The Board's Concerns

{¶ 12} At the panel hearing, the applicant tried to explain her initial failure to disclose the pending DUI charge, her unduly defensive letter to her law school, and her failure to pay fines as agreed. She claimed that she had decided not to disclose the DUI arrest on the advice of her lawyer, who had supposedly taken into account the applicant's lack of any alcohol dependence and lack of any recent criminal conviction.

{¶ 13} As for her letter to the law school after her conviction, the applicant explained that she was "angry and upset" and that she "just wrote off the cuff and sent it and it's not something [that she] should have done." The applicant acknowledged that the letter is "very inflammatory" and that she "had a bad attitude about it." The applicant finished by saying, "I'm not used to being in trouble, and I did not handle it well."

{¶ 14} Finally, when asked about the delinquent payment of her court fines, the applicant replied that she did not realize the default until she received notice of her failure to qualify to take the July 2007 bar exam. When she called the court to inquire about her record, the court informed her of the arrearages. The

applicant explained that she must have forgotten the fines in the excitement of her impending wedding.

{¶ 15} The board was skeptical of the applicant's explanations, noting in particular that she supposedly forgot to pay her fines at the same time she was reporting the DUI conviction to her law school and in connection with her application for the July 2007 bar exam. Moreover, though the applicant tested .17 on a breath analyzer in a jurisdiction with a legal limit of .08 and pleaded guilty to the charged DUI, she continued to debate the validity of her conviction during the board proceedings by blaming everyone but herself. The board thus also expressed misgivings about the applicant's refusal to completely acknowledge her wrongdoing and the disrespect she directed toward the criminal justice system simply for holding her accountable for it.

## Disposition

{¶ 16} An applicant to the Ohio bar must prove with clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). Necessarily, "[a] record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Id.

{¶ 17} Citing the lack of clear and convincing evidence, the board found:

{¶ 18} "The Applicant's conduct with regard to the DUI, her failure timely to pay fines, and to report the offense, as well as her ill-advised letter to the law school written a year after her arrest, bring into question her trustworthiness, diligence and reliability. While the conviction of the DUI itself does not necessarily reflect an untreated alcohol dependency, her conduct can be construed as reflecting dishonesty or at least a failure to provide complete and accurate information about her past. Her failure to pay her fines promptly suggests perhaps a neglect of financial responsibilities. The totality of the evidence presented suggests a failure to accept the responsibilities placed upon her and a lack of mature respect for the law."

{¶ 19} The applicant has yet to sustain her burden of proof. We therefore accept the board's recommendation to disapprove. The applicant, provided that she is able to establish her character, fitness, and other qualifications, may apply to take the February 2009 bar exam.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

William Bruce Davis, for the Cincinnati Bar Association.

Margaret Janet Wagner, pro se.